# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANTONIO SALGADO,

    **Plaintiff,**

vs.

                                                                                                   No. 16-cv-268-DRH-SCW

DR. SIDDIQUI,

    **Defendant.**

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

### I. Introduction

Pending before the Court is a Motion for Summary Judgment submitted by Defendant Dr. Mohammed Siddiqui ("Dr. Siddiqui") on August 20, 2018. (Doc. 67). Plaintiff Antonio Salgado ("Plaintiff") offered on September 19, 2018 a response in opposition of said motion. (Doc. 76). For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment.

### II. Factual and Procedural Background

Plaintiff was incarcerated at Menard Correctional Center ("Menard") at all times relevant to his claim. Plaintiff alleges that, in September 2015, he began experiencing chest pain due to a marble-sized lump on the left side of his chest. On November 23, 2015, after being screened by a nurse, Plaintiff was examined by Dr. Siddiqui. Plaintiff informed Dr. Siddiqui that he had a lump on the left side of his

chest and had been in severe pain for several weeks. Plaintiff now alleges that Dr. Siddiqui did nothing to address his severe pain.

On March 14, 2016, Plaintiff filed his Complaint (Doc.1) for damages under 42 U.S.C. § 1983, alleging that Dr. Siddiqui violated the Eighth Amendment by his deliberate indifference to Plaintiff's medical needs. More specifically, Plaintiff alleges that Dr. Siddiqui was deliberately indifferent to his serious medical needs when Dr. Siddiqui failed to provide Plaintiff "any medical treatment or pain medications" for a lump on his chest. *Id.* On April 6, 2016, the Court issued a Memorandum and Order dismissing Plaintiff's Complaint without prejudice because Plaintiff's Complaint failed to state a claim for which relief may be granted. (Doc. 6).

On April 11, 2016, Plaintiff filed his First Amended Complaint and the Court found that it stated a plausible claim for deliberate indifference. In his First Amended Complaint, Plaintiff sets forth the following relevant facts: in September 2015, Plaintiff started experiencing chest pain due to a "marble size lump" located on the left side of his chest; Plaintiff met with and informed Dr. Siddiqui that the marble-sized lump was causing him extreme pain; Dr. Siddiqui attempted to apply pressure to the lump but Plaintiff stopped him because of the pain; Plaintiff explained that, from a scale of 1-10, he was experiencing a 9 and the pain made it difficult from him to move, swallow, sleep, and participate in daily activities; Dr. Siddiqui indicated to Plaintiff that he did not know the cause of the lump and would

refer Plaintiff to Dr. Trost; and, "Dr. Siddiqui refused to investigate or provide pain medication." (Doc. 1).

Thereinafter, on August 20, 2018, Dr. Siddiqui filed a Motion for Summary Judgment (Doc. 67) and Memorandum (Doc. 68) arguing that: (1) Plaintiff has failed to provide evidence of a serious medical condition; (2) Plaintiff has failed to meet his burden of proof that Dr. Siddiqui was deliberately indifferent to Plaintiff's medical needs; and, (3) Plaintiff has failed to provide evidence of a substantial risk of harm. (Doc. 68). On September 19, 2018, Plaintiff filed a response and objection ("Brief") (Doc. 76) to Dr. Siddiqui's Motion for Summary Judgment (Doc. 67) arguing that: (1) Plaintiff had a serious medical need when he met with Dr. Siddiqui on November 23, 2015 and Dr. Siddiqui did nothing to treat Plaintiff's severe pain; and, (2) Dr. Siddiqui was deliberately indifferent to Plaintiff's serious medical need because Dr. Siddigui did not treat Plaintiff's severe pain and knew that his indifference carried a substantial risk of harm to Plaintiff in the form of continued, untreated severe pain. (Doc. 76).

### III. Applicable Law

**A. Standard of Review – Summary Judgment**

Summary judgment is appropriate only if the admissible evidence considered as a whole shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014) (citing Fed. R. Civ. P. 56(a)). The party seeking summary judgment bears the initial burden of demonstrating – based on the

pleadings, affidavits and/or information obtained via discovery – the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Bunn v. Khoury Enterpr. Inc.*, 753 F.3d 676 (7th Cir. 2014).

In assessing a summary judgment motion, the district court normally views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012); *Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011); *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014). If genuine doubts remain and a reasonable fact finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enter., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989). If it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to

prove one essential element necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 323.

B.     **Standard of Review – Deliberate Indifference**

The Eighth Amendment, as incorporated against the states by the Fourteenth Amendment, imposes a duty on prison officials to ensure that inmates receive adequate medical care. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney,* 509 U.S. 25, 31 (1993). The Eighth Amendment's prohibition against cruel and unusual punishment "requires the State to provide adequate medical care to incarcerated prisoners." *DeShaney v. Winnebago County Dep't of Soc. Services,* 489 U.S. 189, 198 (1989). Because an inmate cannot care for himself because of the deprivation of his liberty, "it is only 'just' that the State be required to care for him." *Id.* at 199 (quoting *Estelle v. Gamble,* 429 U.S. 97, 97 (1976) (quoting *Spicer v. Williamson,* 191 N.C. 487, 490 (1926)).

Deliberate indifference to a prisoner's serious medical need constitutes a violation of the prisoner's Eighth Amendment rights. *Estelle,* 429 U.S. at 104. The Seventh Circuit's test for deliberate indifference claims involves "both an objective and subjective component." *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005); *Farmer*, 511 U.S. at 834. "To satisfy the objective component, a prisoner must demonstrate that his medical condition is objectively, sufficiently serious . . . To satisfy the subjective component, a prisoner must demonstrate that prison officials

acted with a sufficiently culpable state of mind." *Id.* at 653 (citations and quotation marks omitted).

In analyzing whether a plaintiff suffered from an objectively serious condition posing a substantial risk of serious harm, "[t]he question under the Eighth Amendment is whether prison officials . . . exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health . . . .'" *Farmer*, 511 U.S. at 843 (quoting *Helling*, 509 U.S. at 35). To satisfy the objective component, a prisoner must show that his medical needs are "objectively, sufficiently serious." *Greeno*, 414 F.3d at 653 (citing *Farmer*, 511 U.S. at 834). "A serious medical condition is one that has been diagnosed by a physician . . . or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Id.* An injury or illness meets the objective element if the condition is sufficiently serious or painful so as to make the denial of treatment uncivilized. *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir.1996). "[T]here is no requirement that a prisoner provide 'objective' evidence of his pain and suffering—self-reporting is often the only indicator a doctor has of a patient's condition." *Greeno*, 414 F.3d at 655.

The second component of the two-part test requires a prisoner to demonstrate that prison officials acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs . . . ." *Kelley v. McGinnis*, 899 F.2d 612, 616 (7th Cir.1990) (quoting *Estelle*, 429 U.S. at 104–105) (internal quotations omitted). To be found

liable for deliberate indifference, the official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837. "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842.

The actions committed by the official must be deliberate or so dangerous that the knowledge of the risk can be inferred. *Snipes v. DeTella,* 95 F.3d 586, 590 (7th Cir.1996). "A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition.'" *Id.* at 592 (quoting *Thomas v. Pate,* 493 F.2d 151, 158 (7th Cir.1974)).

## IV. <u>Analysis</u>

Plaintiff alleges that Dr. Siddiqui violated the Eighth Amendment by his deliberate indifference to Plaintiff's medical needs. Deliberate indifference to a prisoner's serious medical needs constitutes a violation of the prisoner's Eighth Amendment rights. *Estelle,* 429 U.S. at 104. Therefore, the Court will discuss Plaintiff's deliberate indifference claim utilizing the Seventh Circuit's two-part test that contains both an objective and subjective component.

Plaintiff alleges that he was harmed when Dr. Siddiqui was deliberately indifferent to his serious medical needs by failing to provide Plaintiff with "any medical treatment or pain medications" for a lump on his chest. (Doc. 1). The Court

first looks to whether Plaintiff's medical condition was objectively, sufficiently serious. The Court then looks to whether Dr. Siddiqui acted with a sufficiently culpable mind by disregarding an excessive risk to Plaintiff's health.

**A. Objective Component**

Based on the totality of the evidence, Plaintiff is unable to satisfy the objective component because he has not demonstrated that he had an objectively serious condition posing a substantial risk of serious harm when he met with Dr. Siddiqui on November 23, 2015. "A serious medical condition is one that has been diagnosed by a physician . . . or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno,* 414 F.3d at 653. An injury or illness meets the objective element if the condition is sufficiently serious or painful so as to make the denial of treatment uncivilized. *Cooper v. Casey,* 97 F.3d 914, 916 (7th Cir.1996).

Plaintiff asserts that he started experiencing severe chest pain in September 2015. Plaintiff further alleges that he reported to Dr. Siddiqui on November 23, 2015 that he had a small lump on his chest causing him severe pain but Dr. Siddiqui refused to investigate or provide pain medication. The record indicates that Plaintiff was seen by a member of Menard's nursing staff on September 28, 2015, but the notes related to that visit do not indicate that Plaintiff was

experiencing a painful lump on his chest. (Doc. 68-1). On November 23, 2015, after examining Plaintiff, Dr. Siddiqui noted that Plaintiff had a pea-sized lump on his left breast, questioned whether Plaintiff required a mammogram, and referred Plaintiff to Dr. Trost, the medical director and primary physician at Menard, for further evaluation. Dr. Siddiqui testified in his deposition, Exhibit B (Doc. 68-2) to Defendant's motion to dismiss that there was no indication of pain in the record (deposition page 40), that pain medication was not indicated (deposition page 54), and that his objective assessment was that there was no reason for pain (deposition page 56).

Dr. Siddiqui argues that Plaintiff failed to provide evidence of a serious medical need because the Seventh Circuit has previously recognized that lipomas are benign. *Thompson v. Godinez*, 561 Fed. Appx. 515, 519 (7th Cir. 2014. In *Thompson*, the Plaintiff believed that the lipoma caused him to become "faintish and dizzy." *Id.* at 517. The Seventh Circuit concluded that "despite [Plaintiff's] belief that the lipoma causes dizziness, the condition actually is benign. These details negate Thompson's claim that doctors disregarded a substantial risk of harm from the lipoma, which cannot be called a serious medical condition." *Id.* at 519.

Plaintiff contends that *Thompson* is distinguishable from the case at bar, because the "Thompson plaintiff did not complain his lipoma caused pain. Instead, the plaintiff complained it caused him only to become 'faintish and dizzy.'" (Doc. 76, p. 14). The Court disagrees with the above contention, because feeling faintish and dizziness is a form of pain. Moreover, in *Thompson*, the Plaintiff complained

of pain in the form of dizziness and feeling faintish in September 2012, was referred to a second doctor in October 2012, and then referred to a third doctor in December 2012. Despite complaining of dizziness and feeling faintish, the *Thompson* Plaintiff was referred to two other doctors for further evaluation.

In this case, like in *Thompson*, Plaintiff had a lipoma and complained to Dr. Siddiqui that he was in pain. Dr. Siddiqui conducted a physical examination, concluded there was a lump on Plaintiff's chest that might require a mammogram, and then referred Plaintiff to the medical director of Menard for further evaluation. Therefore, like in *Thompson*, Plaintiff cannot prove that a lipoma is a serious medical condition.

Plaintiff further argues that he presented a serious medical need when he saw Dr. Siddiqui in November 2015 because he complained that he was in severe pain. As stated in Plaintiff's Brief:

> In deliberate indifference lawsuits, the Seventh Circuit has cautioned against discounting a patient's complaints of pain. For example, the plaintiff inmates in *Cooper v. Casey*, 97 F.3d 914, 915-17, (7th Cir. 1996), were beaten by guards and received no medical assistance for a mere 48 hours. On those facts, the Seventh affirmed a judgment in favor of the plaintiffs on the issue of deliberate indifference. *Id.* at 917. Indeed, the Seventh Circuit has found that even a few days' delay in treating painful conditions can support a deliberate indifference claim. *See Rodriquez v. Plymouth Ambulance Service*, 577 F.3d 816, 819 (7th Cir. 2009) (state employees could be liable for four-day delay in treating a prisoner who complained that his IV was causing him serious pain); *Edwards v. Snyder*, 478 F.3d 827, 830-31 (7th Cir. 2007) (plaintiff stated a claim when he alleged he painfully dislocated his finger and was denied treatment for two days).

(Doc. 76, pp. 11-12).

In addition to the cases cited above, Plaintiff urges the Court to look to *Dismukes v. Baker*, 2013 WL 28770, *2 (C.D. Ill. 2013) for guidance. In *Dismukes*, the plaintiff had been diagnosed with a lipoma and complained of pain. *Id.* at *3. As attending doctor, Dr. Baker saw the *Dismukes* Plaintiff on a monthly basis from May 2011 to January 2012. The court noted that "Plaintiff has consistently complained to health care staff of bad headaches, memory loss, and pain which he believes to be caused by the lipoma." *Id.* The court then observed that "the only evidence in the record of a serious medical need or deliberate indifference thereto arises from Plaintiff's own testimony about pain he experiences." *Id.* at *4.

In this case, unlike in *Dismukes*, Dr. Siddiqui saw Plaintiff on one occasion, not on a monthly basis for nine consecutive months, and Plaintiff did not consistently complain that he was in pain. Rather, Plaintiff allegedly complained to Dr. Siddiqui on one occasion that he was in severe pain, but not because he was severely beaten or had an allegedly dislocated finger, but because he had a pea-sized lipoma on his chest. Based on Dr. Siddiqui's experience and expertise, and like the *Thompson* doctors, Dr. Siddiqui concluded that Plaintiff had not presented a serious medical need on November 23, 2015 and further evaluation was required. Therefore, based on the totality of the evidence, Plaintiff is unable to demonstrate that he presented a serious medical need, and thus, will be unable to satisfy a legal requirement necessary to establish his case.

Assuming, *arguendo*, that Plaintiff can prove that his lipoma constituted a serious medical condition, he must still satisfy the subjective prong of the two-part

test. The Court now turns to whether Dr. Siddiqui acted with a sufficiently culpable mind by disregarding an excessive risk to Plaintiff's health.

**B. Subjective Component**

Plaintiff has not demonstrated that Dr. Siddiqui acted with a sufficiently culpable mind by disregarding an excessive risk to Plaintiff's health. The Seventh Circuit has explained that to "demonstrate that a defendant acted with a 'sufficiently culpable state of mind,' a plaintiff must put forth evidence to establish that the defendant knew of a serious risk to the prisoner's health and consciously disregarded that risk." *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (quoting *Johnson v. Doughty,* 433 F.3d 1001, 1010 (7th Cir. 2006)). In other words, "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Sain v. Wood,* 512 F.3d 886, 894–95 (7th Cir. 2009). The Supreme Court has compared the deliberate indifference standard to that of criminal recklessness. *Farmer*, 511 U.S. at 837.

Dr. Siddiqui argues that Plaintiff has failed to provide evidence of a substantial risk of harm because Plaintiff's condition was monitored by multiple physicians and none of those physicians determined that pain medications were an appropriate course of treatment for the lump on Plaintiff's chest.

Plaintiff argues that he reported to Dr. Siddiqui in November 2015 that the lump on his chest had been causing him pain for more than eight weeks. Plaintiff further argues in his Brief that:

> There is nothing in the record indicating Dr. Siddiqui made a calculated decision to deny pain medication, based on Salgado's medical history or other conditions. To the contrary, Dr. Siddiqui's November 2015 record contains no notes about Salgado's history, or any other condition. Further, Siddiqui admitted he had the ability to review Salgado's medical records when examining him on November 2015, but does not remember doing so. Dr. Siddiqui admitted that if he did so, it would be noted in his records. No such notes appear.

(Doc. 76, p. 16).

A lipoma is a knot of fatty tissue, "nearly always benign" and "[i]n many cases, lipomas do not need to be treated." CLEVELAND CLINIC, http://my.clevelandclinic.org/disorders/lipomas/hic_lipomas.aspx (last visited Oct. 1, 2018). "Lipomas rarely cause pain, and so most people have no symptoms. However, a person with a lipoma can have some pain if the lipoma presses on the nerves or has some blood vessels running through it." *Id.*

In this case, Plaintiff was seen by Dr. Siddiqui and complained that a lump on his chest was causing him severe pain. After conducting a physical examination, Dr. Siddiqui did not believe it was clinically necessary for him to prescribe Plaintiff any pain medications, but believed that Plaintiff should be further evaluated by Dr. Trost, the medical director and primary physician at Menard.

As the Seventh Circuit has noted, "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Sain*, 512 F.3d at 894–95. It cannot be said that, under the same circumstances, no minimally competent professional would have responded in the same manner as Dr. Siddiqui. While in rare instances, a lipoma may cause pain, in many cases the condition requires no

treatment. Based on his experience and expertise, Dr. Siddiqui made a treatment decision to have Plaintiff seen by another doctor for further evaluation. Therefore, based on the totality of the evidence, Plaintiff is unable to demonstrate that Dr. Siddiqui acted with a sufficiently culpable mind by disregarding an excessive risk to Plaintiff's health.

### V. Conclusion

In sum, the Court concludes that Plaintiff has failed to make a sufficient showing of the essential elements of his claim. The Court believes that summary judgment is appropriate here because the record supports such a finding.

Accordingly, the Court finds that there are no genuine issues of material fact and **GRANTS** Defendant's Motion for Summary Judgment. Thus, the Court finds in favor of Defendant and against Plaintiff on his Amended Complaint for deliberate indifference. Further, the Court directs the Clerk of the Court to enter judgment reflecting the same.

**IT IS SO ORDERED.**

Judge Herndon
2018.10.03
13:17:00 -05'00'

United States District Judge